1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10    RICARDO RANGEL,

11              Petitioner,              No. 2:11-cv-2273 KJM EFB P

12        vs.

13    BRENDA CASH,

14              Respondent.              FINDINGS AND RECOMMENDATIONS

15    _____/

16        Petitioner is a state prisoner without counsel proceeding with an application for a writ of

17    habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2008 judgment of

18    conviction entered against him in the San Joaquin County Superior Court on charges of

19    aggravated kidnapping, rape, forcible oral copulation, forcible sexual penetration by a foreign

20    object, and assault with the intent to commit rape.  He seeks relief on the grounds that: (1) the

21    evidence was insufficient to support his conviction for aggravated kidnapping and the true

22    findings on the movement and kidnapping sentence enhancements; (2) the trial court violated his

23    federal constitutional rights by excluding evidence of the victim's prior sexual conduct; (3) the

24    trial court violated his federal constitutional rights when it excluded the victim's postings on a

25    social media site; (4) his due process rights were violated by jury instruction error; and (5) the

26    trial court committed sentencing error.  Upon careful consideration of the record and the

1

applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

**I.    Background[1]**

> A jury convicted defendant Ricardo Herrera Rangel of aggravated kidnapping (Pen.Code, § 209, subd. (b)(1)),[2] rape (§ 261, subd. (a)(2)), forcible oral copulation (§ 288a, subd. (c)(2)), forcible sexual penetration by a foreign object (§ 289, subd. (a)(1)), and assault with the intent to commit rape (§ 220).  The jury also determined as enhancements that defendant, in order to commit rape and penetration by a foreign object, moved the victim in a manner which substantially increased the risk of harm (§ 667.61, subd.(d)(2)), and that defendant kidnapped the victim for the purpose of committing rape, oral copulation, and penetration by a foreign object.  (§ 667.8, subd. (a).)  The jury acquitted defendant of one count of attempted robbery (§§ 664, 211), and found not true an allegation that defendant moved the victim for the purpose of committing oral copulation.

> The trial court sentenced defendant to a state prison term in the aggregate of 68 years to life, calculated as follows: the middle term of six years for the rape plus 25 years to life for the associated movement enhancement; the middle term of six years for the oral copulation conviction; and the middle term of six years on the foreign object penetration conviction plus 25 years to life for the associated movement enhancement.

> Pursuant to section 654, the trial court stayed the following prison terms: a term of life with the possibility of parole for the aggravated kidnapping conviction; a four-year term on the assault conviction; and three separate nine-year terms for the kidnapping enhancements.[3]

* * *

////

////

---

[1]  In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary.

[2]  Subsequent undesignated references to sections are to the Penal Code.

[3]  The court stayed the sentence on the aggravated kidnapping conviction because that conviction merged with the section 667.61 enhancement.  In its and the prosecutor's opinions, section 667.61 required a completed sex crime, but section 209, the aggravated kidnapping statute, did not.

2

## FACTS

19-year-old Mallory Doe was walking to work along South Main Street in Manteca about 7:00 a.m. on a cold December morning when she heard someone running up from behind her. Immediately someone wrapped their arms around her neck. Mallory tried to scream, but her assailant punched her in the lower lip of her mouth.  The assailant, a male, told her not to say anything or else she would be hurt more.

The assailant put Mallory into a headlock and pulled her into an alley off the main road and behind a Social Security Administration building.  He forced Mallory to stand in front of him in a dirt area with her back towards him and facing a brick wall and some bushes.  He said if Mallory would keep quiet, "this would benefit" her.

The assailant stuck his right hand underneath Mallory's skirt, nylons, and underwear, and he inserted his fingers inside her vagina.  As he did this, he asked Mallory how old she was and if she had a boyfriend.  Mallory replied she was 19 years old and she had a boyfriend.

The assailant asked Mallory if she "liked to fuck."  Mallory said she did not because she was undergoing treatment for the early stages of cervical cancer, and if the assailant did anything to her it would hurt.  He told her to quit whining or else he would hurt her more.

Mallory then heard the assailant unzip his pants.  He was still standing behind her with one hand around her neck so she could not move.  He told her to take her left hand and rub his penis to get it hard.  She did so.  He told her if she hurt him, it would make things worse.  He also said she had to get him hard or else she would have to give him "head" (oral copulation).

Mallory told the assailant she did not want to rub his penis.  He told her to spit in her hand and keep rubbing.  She continued to rub his penis, and then he told her she would have to orally copulate him for four minutes.  When Mallory protested, he dropped the time to three minutes.  She told him she did not want to do it, and he reduced the time to 30 seconds.

The assailant told Mallory to turn around.  Before she could completely turn towards him, he pulled the collar of his jacket up to cover his mouth and part of his nose.  Mallory could discern the assailant was a Hispanic or Latino male, about five feet 10 inches tall, with short black hair, buzzed on the sides but longer in the middle, and slicked back.  He wore a dark-colored nylon track jacket, dark-colored pants, a belt, and light-colored sneakers.

Mallory did not know the assailant and had never seen or met him in her life.

The assailant told Mallory to get down, and that she had better not hurt him or he would make things worse. Mallory kneeled down, and the assailant put his penis in her mouth. He kept a hand on the back of Mallory's head so she could not pull away. Mallory orally copulated him for about a minute until he told her to stop.

The assailant told Mallory to stand up. She did and turned back to face the wall. He asked her if she liked it "doggy style," and she said no. He stuck his hand down her skirt again and put his fingers inside her vagina. Then he put his hand underneath her shirt and bra and fondled her breast.

He then pulled down Mallory's skirt, nylons and underwear to her thighs, put his hand between Mallory's legs, and told Mallory to spread them. Mallory was scared, so she complied. The assailant pushed his pelvis into Mallory and attempted to insert his penis into her vagina. He inserted his penis part way, kept pushing for a little while, and then withdrew. Mallory was not sure if he ejaculated. Mallory asked if she could pull her skirt up, and he agreed.

The assailant asked Mallory if she had any money. She said she did not. The assailant said she had better not be lying. To prove she was not, Mallory said she would reach into her purse, grab her wallet, and show him she did not have any money. She did so, and then put the wallet back into her purse.

The assailant told Mallory to turn to the left. She did, and she heard him run away. She counted for 20 seconds, and then looked over to see if he was gone. She turned around, ran to the side of the Social Security office, and saw a woman there using her cell phone. Mallory told the woman she had just been raped. The woman, Lupita Torres, a Social Security Administration employee, called police. Torres testified that Mallory was crying, nervous, and "completely distraught." Torres also testified that a light in the alley was not working that morning, and the alley was dark.

Mallory gave police a description of her assailant. The description was broadcast to other patrol units in the area. Moments later, Manteca Police Officer Robert Armosino located a person matching the description of Mallory's assailant about one-half mile from the crime scene. The suspect was defendant. He was wearing a black sleeveless shirt with no jacket even though it was only 40 degrees outside.

////

////

Police transported Mallory to where defendant was being held. Mallory identified defendant as her assailant. Although he was not wearing a jacket, he had the same looking pants and shoes, and his hair matched what she had seen. Defendant was arrested.

Police recovered a black jacket hanging on the side of a dumpster about two blocks from where defendant was detained. When given the jacket, Officer Armosino noticed the jacket smelled of the same cologne that he had smelled on defendant and that was in a bottle of cologne he had found on defendant's possession.

At the crime scene, police noticed some shoe impressions in the area where Mallory had said the attack occurred. Manteca Police Officer Matthew Simpson visually compared the impressions with defendant's shoes. The impressions appeared to be the same pattern as those on the bottom of defendant's shoes. After examining a cast of the shoe impressions with defendant's shoes, a Department of Justice criminalist later concluded she could not exclude the possibility that the impressions at the crime scene were made by defendant's left shoe.

Mallory had told Manteca Police Detective Steve Beerman the distance defendant had moved her from the sidewalk to the alley behind the Social Security Administration building was a couple of feet. She testified at trial that she was moved approximately 10 feet. Investigating officers, however, determined the distance from the sidewalk to the crime scene where the shoe impressions were found was at least 53 feet.

Investigating police at the scene observed surveillance cameras mounted on the Social Security Administration building. One was on the back of the building facing the alley, and another was on the side of the building. However, no images of the assault were captured by the cameras on videotape.

A medical examination of Mallory disclosed a three-millimeter long mucosal tear of Mallory's posterior fourchette, i.e., "the rear most portion of the outer portion of the vagina." The examining physician, Dr. Douglas DeMartinis, stated the tear implied that some degree of force was applied to that particular area of the body. In Dr. DeMartinis's experience, the posterior fourchette was a common area to see injuries in women who had been sexually assaulted. He also agreed it was possible for a woman to have such a tear after consensual sexual intercourse, but he would not expect to see one after consensual intercourse.

Dr. DeMartinis did not notice any injuries to Mallory's mouth. However, prior to Dr. DeMartinis's examination, Detective Beerman had noticed the lower left side of Mallory's lip was swollen. Detective Beerman photographed the injury.

DNA analysis was performed on samples taken from both Mallory and defendant.  Semen found on Mallory's underwear and on her vaginal swabs matched defendant's DNA profile.  DNA from defendant's penile swab matched Mallory's DNA profile. Mallory's boyfriend was eliminated as a possible donor of the semen found on Mallory's underwear and vaginal swabs.

On the same day as the assault, Detective Beerman interviewed defendant at the police station.  Defendant initially claimed he had been out that morning looking for his girlfriend's lost necklace when the police stopped him.  He denied going to the shopping center where the Social Security Administration office was located. He also claimed he did not know, and had never met, the victim.

Later in the interview, defendant changed his story.  He said he was very angry with his girlfriend that morning when he crossed paths with the victim.  He grabbed the victim from behind with his arm around her neck, told her he was not going to hurt her, and moved her off the sidewalk a couple of yards.  Defendant did not remember anything that happened after he moved the victim.  He denied using drugs that day or the day before.  He did not know the victim's name.

During the interview, defendant denied wearing a jacket that morning.  However, when he was shown the jacket that was recovered from the dumpster near the crime scene, defendant admitted the jacket was his.  He claimed he had not seen it since the night before.

During the interview, defendant wrote a letter of apology to Mallory.  The letter stated: "I know that I'm the last person you want to hear from right now, but from the bottom of my heart I am so very sorry for everything that I put you through.  This was the last thing on my mind that I would have ever done to anybody. You don't deserve this, and I honestly hope the best for you.  I'm sorry.  [¶]  I messed up your X-Mas and now I messed up mine, and I will not be able to see my child who I haven't seen in a while. That breaks my heart.  I know I deserve everything or charge you have against me.  I just wanted to apologize to you for everything. I'm sorry.  [¶]  Wish you the best.  You deserve it.  Ricardo Rangel."

**Defense**

Defendant's defense at trial was consent.  His testimony contradicted much of what he had told Detective Beerman. Defendant testified he had known Mallory for about a month and a half.  He claimed he and Mallory were together the night before the alleged attack and arranged to meet the next morning before she started work.  Mallory asked defendant to bring some

6

methamphetamine with him.  She would pay him $10 for it.

The next day, they met in front of the house directly north of the Social Security Administration building.  Because people were walking on the sidewalk, they went into a nearby alley.  He did not grab Mallory or forcibly move her into the alley.  Defendant noticed a bump on Mallory's lip, and they talked about it.  Then they began consensually engaging in sexual acts with each other.  Defendant tried to have intercourse with Mallory, but he could not get an erection because he was on drugs.  He did not believe he ever ejaculated.

While defendant was trying to have sex with Mallory, she recognized someone passing by, so they stopped.  Defendant gave Mallory the methamphetamine and Mallory gave him $10.  Defendant placed the money in his jacket pocket and left.  He discarded the jacket on the side of a dumpster because it was old and torn, and because he was afraid his girlfriend would smell another woman's scent on the jacket.

Defendant denied speaking truthfully with Detective Beerman.  He lied because the police refused to let him make a phone call or have a drink of water.  He did not mention having consensual sex with Mallory to Detective Beerman because he was trying to protect her.  She was a nice person, and he feared her boyfriend would beat her up for what they did.  He also expected Mallory at some point to come forward and tell the truth.

Resp't's Lodg. Doc. 1 (Opinion) at 1-11.

## II.   Analysis

### A.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

////

7

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the state court decision. *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (*citing Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Nonetheless, "circuit court precedent may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[4] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that

---

[4] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*,131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for

1    the state court's decision is more likely." *Id*. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797,

2    803 (1991)).  Where the state court reaches a decision on the merits but provides no reasoning to

3    support its conclusion, a federal habeas court independently reviews the record to determine

4    whether habeas corpus relief is available under § 2254(d).  *Stanley*, 633 F.3d at 860; *Himes v.*

5    *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo

6    review of the constitutional issue, but rather, the only method by which we can determine

7    whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853.

8    Where no reasoned decision is available, the habeas petitioner still has the burden of "showing

9    there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S. Ct. at 784.

10           When it is clear, however, that a state court has not reached the merits of a petitioner's

11   claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

12   habeas court must review the claim de novo.  *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462

13   F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook,* 333 F.3d 1052, 1056 (9th Cir. 2003).[5]

14           **B. Petitioner's Claims**

15                   **1. Insufficient Evidence**

16           In petitioner's first ground for relief, he claims that the evidence was insufficient to

17   support his conviction on the aggravated kidnapping charge and the kidnapping and movement

18   sentence enhancements.  Dckt. 1 at 7.  He notes that Mallory testified at trial that she was moved

19   only a few feet into the alley.  *Id.* at 7, 8.  He argues that this small movement did not

20   "substantially increase the risk of harm" to Mallory.  *Id.* at 8-9.[6]

21

22           [5]  The United States Supreme Court has recently granted certiorari in a case apparently to
     consider this issue.  *See Williams v. Cavazos*, 646 F.3d 626, 639-41 (9th Cir. 2011), *cert. granted*
23   *in part*, ___U.S.___, 132 S. Ct. 1088 (2012).

24           [6]  Respondent argues that this claim is unexhausted because petitioner did not allege a
     violation of the federal constitution when he raised the claim in state court.  Dckt. No. 17 at 16-
25   17.  Even assuming arguendo that petitioner's claim of insufficient evidence was not exhausted
     in state court, this court will recommend that it be denied on the merits.  *See* 28 U.S.C.
26   § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits,

The California Court of Appeal rejected these arguments, reasoning as follows:

**Sufficiency of Evidence of Aggravated Kidnapping and Kidnapping Enhancements**

Defendant contends there is insufficient evidence to support his conviction of aggravated kidnapping and the kidnapping and movement enhancements.  He claims the evidence does not support a finding that he moved the victim in a manner that was not merely incidental to the rape, or that the movement increased the risk of harm to the victim above that present in the rape.

We disagree.  Substantial evidence in the record shows defendant moved the victim in a manner that was not incidental to the rape, and that the movement increased the risk of harm to the victim.

Aggravated kidnapping occurs when a person "kidnaps or carries away any individual to commit [among other crimes] rape . . . ." (§ 209, subd. (b)(1).)  The kidnapping is aggravated only "if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense." (§ 209, subd. ( b)(2).)

The asportation element thus "involves two prongs.  First, the defendant must move the victim and this asportation must not be 'merely incidental to the [rape].'  (*People v. Martinez* (1999) 20 Cal.4th 225, 232; § 209, subd. (b)(2).)  Second, the movement must increase 'the risk of harm to the victim over and above that necessarily present in the [rape].'  (*People v. Martinez, supra*, at p. 232.)  The two are not mutually exclusive, they are interrelated. (*People v. Rayford* (1994) 9 Cal.4th 1, 12.)

"For the first prong, the jury considers the distance the defendant moved the victim and the 'scope and nature' of the movement. (*People v. Rayford, supra*, 9 Cal.4th at p. 12; *People v. Jones* (1999) 75 Cal.App.4th 616, 628-629.)  For the second, it considers whether the movement gave the defendant 'the decreased likelihood of detection' and an 'enhanced opportunity to commit additional crimes.'  (*People v. Rayford, supra*, 9 Cal.4th at p. 13.)" (*People v. Shadden* (2001) 93 Cal.App.4th 164, 168.)

Substantial evidence in the record demonstrates defendant's movement of Mallory was neither incidental to the rape nor insubstantial.  Defendant grabbed Mallory from behind and forcibly moved her from the sidewalk of a city street to an alley behind a building, a distance according to police of 53 feet.  The

notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

movement was not incidental to rape, as rape "does not necessarily require movement to complete the crime." (*People v. Salazar* (1995) 33 Cal.App.4th 341, 348, fn. 8.) "Where a defendant drags a victim to another place, and then attempts a rape, the jury may reasonably infer that the movement was neither part of nor necessary to the rape. [Citations.]" (*People v. Shadden, supra*, 93 Cal.App.4th at p. 169.) The jury could infer the movement was not incidental because defendant began the sexual attack only after he moved Mallory.

The evidence also shows the movement was substantial. "Where movement changes a victim's environment, it does not have to be great in distance to be substantial." (*People v. Shadden, supra*, 93 Cal.App.4th at p. 169.) Defendant took Mallory from a city street near businesses to an alley that was much more isolated and secluded. The alley was bordered by the back of the Social Security Administration building on one side and a brick sound wall on the other. Trees and shrubs in a planter area alongside the sound wall provided concealment and seclusion. This new environment increased the risk of harm, decreased the likelihood of detection, and enhanced defendant's opportunity to commit other crimes. The evidence thus sufficiently supports the asportation element of the aggravated kidnapping conviction and the related kidnapping and movement enhancements.

Defendant claims the evidence is insufficient and shows the movement was merely incidental and insubstantial. He asserts the evidence shows the movement was incidental because Mallory told the detective that defendant moved her a couple of feet, and she stated in her trial testimony that defendant moved her an estimated distance of 10 feet. Defendant relies on *In re Crumpton* (1973) 9 Cal.3d 463, 466 (*Crumpton*), and *People v. Daniels* (1969) 71 Cal.2d 1119, 1134 (*Daniels*), cases involving aggravated kidnapping to commit robbery, to claim a distance of 10 feet under the circumstances of his crimes was incidental.

To the extent Mallory's statements conflict with the testimony of the police officers that the movement was 53 feet, we resolve all factual conflicts in favor of the judgment (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429), and thus rely on the officers' testimony to the extent necessary to affirm the judgment.

More significantly, the actual distance a victim is moved beyond what is necessary to commit the crime is not a determinative factor. As defendant acknowledges, "there is no minimum number of feet a defendant must move a victim in order to satisfy the first prong [of non-incidental movement]." (*People v. Martinez, supra*, 20 Cal.4th at p. 233.) The actual distance moved is only one factor to consider. The court must also review the scope and nature of the movement.

This is particularly true in the case of rape.  In robbery cases like those cited by defendant, the movement is oftentimes necessary to complete the crime, such as in *Crumpton* and *Daniels*, where the assailants moved the victims by force or fear to gain access to money.  However, "there is a difference between robbery where a defendant moves a victim to target a safe, and rape where a defendant moves a victim to target her body."  (*People v. Aguilar* (2004) 120 Cal.App.4th 1044, 1051.)  "[A] rape involves solely an attack on the person and does not necessarily require movement to complete the crime."  (*People v. Salazar, supra,* 33 Cal.App.4th at p. 347, fn. 8.)  Thus, even if defendant moved Mallory only 10 feet before raping her, that distance is sufficient because the nature and circumstances of defendant's crimes demonstrate the movement was not incidental and was not insubstantial.

Defendant argues the movement was insubstantial because it allegedly did not increase the risk of harm.  This, defendant claims, was because there was a light and security cameras in the alley.  Substantial evidence indicates otherwise.  The alley was long and contained trees and bushes that provided defendant cover from traffic on the main street.  In addition, the security cameras captured no images of the assault, and, according to Ms. Torres, the Social Security Administration employee from whom Mallory first sought help, the light in the alley was not working that morning and the alley was dark.

Under these circumstances, we easily conclude substantial evidence supports the aggravated kidnapping conviction and the kidnapping and movement enhancements.  When defendant moved Mallory from a public sidewalk along a city street to an area of trees and bushes in a dark alley, he isolated her and substantially increased the risk of harm to her.  The movement was neither incidental nor insignificant.

Opinion at 11-16.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "[T]he dispositive question under *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a

////

13

1  reasonable doubt.'"  *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443

2  U.S. at 318).

3      In conducting federal habeas review of a claim of insufficient evidence, "all evidence

4  must be considered in the light most favorable to the prosecution."  *Ngo v. Giurbino*, 651 F.3d

5  1112, 1115 (9th Cir. 2011).  "*Jackson* leaves juries broad discretion in deciding what inferences

6  to draw from the evidence presented at trial," and it requires only that they draw "'reasonable

7  inferences from basic facts to ultimate facts.'"  *Coleman v. Johnson*,___ U.S. ___, 132 S.Ct.

8  2060, 2064 (2012) ( *per curiam* ) (citation omitted).  "'Circumstantial evidence and inferences

9  drawn from it may be sufficient to sustain a conviction.'"  *Walters v. Maass*, 45 F.3d 1355, 1358

10  (9th Cir.1995) (citation omitted).

11      "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging

12  the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."

13  *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).  In order to grant relief, the federal habeas

14  court must find that the decision of the state court rejecting an  insufficiency of the evidence

15  claim reflected an objectively unreasonable application of *Jackson* and *Winship* to the facts of

16  the case.  *Ngo*, 651 F.3d at 1115; *Juan H.*, 408 F.3d at 1275 & n.13.  Thus, when a federal

17  habeas court assesses a sufficiency of the evidence challenge to a state court conviction under

18  AEDPA, "there is a double dose of deference that can rarely be surmounted."  *Boyer v. Belleque*,

19  659 F.3d 957, 964 (9th Cir. 2011).  The federal habeas court determines sufficiency of the

20  evidence in reference to the substantive elements of the criminal offense as defined by state law.

21  *Jackson*, 443 U.S. at 324 n.16; *Chein*, 373 F.3d at 983.

22      After reviewing the state court record in the light most favorable to the jury's verdict, this

23  court concludes that there was sufficient evidence introduced at petitioner's trial from which a

24  rational trier of fact could have found beyond a reasonable doubt that petitioner committed

25  aggravated kidnapping and that the kidnapping and movements enhancements were true.  For the

26  reasons set forth in the opinion of the California Court of Appeal, the evidence introduced at

petitioner's trial was sufficient to support a finding that petitioner moved the victim in a manner that was not incidental to the rape, and that the movement increased the risk of harm to the victim, as those terms are defined under California law.  Although there was conflicting evidence with regard to how many feet the victim was moved, the conclusion of the state appellate court that the movement was sufficient to support petitioner's convictions is not unreasonable.  In order to obtain federal habeas relief on this claim, petitioner must demonstrate that the state courts' denial of relief with respect to his insufficiency of the evidence arguments was an objectively unreasonable application of the decisions in *Jackson* and *Winship* to the facts of this case.  Petitioner has failed to overcome the deference due to the state court's findings of fact and its analysis of this claim.  Accordingly, petitioner is not entitled to federal habeas relief on his insufficiency of the evidence claim.

### 2.  Exclusion of Evidence of Victim's Prior Sexual Conduct

In his next ground for relief, petitioner claims that the trial court violated his right to confrontation and his right to present a defense when it refused to allow petitioner's trial counsel to cross-examine the victim about her recent sexual activity with her boyfriend.  Dckt. No. 1 at 7, 10-11.  He argues that this evidence "went to the heart of the defense of consent, requiring reversal."  *Id.* at 7.

The California Court of Appeal denied this claim, finding that any error was harmless.  The court reasoned as follows:

> **Exclusion of Evidence of Prior Sexual Conduct**
>
> Defendant claims the trial court committed prejudicial error when it refused to allow defense counsel to cross-examine Mallory and Dr. DeMartinis about Mallory's prior sexual conduct within five days of the attack.  Defendant claims he was entitled to introduce the evidence as an alternate explanation for the injury to Mallory's vagina.  We conclude the even if the trial court may have erred by not allowing defendant to cross-examine Mallory and Dr. DeMartinis about the prior sexual conduct, such an error was harmless under any standard.

////

**A. Additional background information**

Defense counsel filed an in limine motion seeking to cross-examine Mallory and Dr. DeMartinis about a sexual encounter Mallory had with her boyfriend five days before the attack.  As an offer of proof, counsel submitted an affidavit under seal stating that while she reviewed reports associated with this case, she became aware that Mallory told medical and police personnel she had engaged in consensual intercourse with her boyfriend "within five days" of the assault.  Counsel argued the evidence was relevant to show an alternate cause of Mallory's injury to her posterior fourchette.  Counsel asserted the evidence did not go to the issue of Mallory's credibility, but counsel, out of an abundance of caution, brought her motion pursuant to Evidence Code section 782, a procedure used to determine the admissibility of sexual conduct evidence proposed to attack the testifying victim's credibility.

The prosecutor acknowledged Mallory had indicated on her medical record that she had consensual sexual intercourse with her boyfriend five days before the attack.  Mallory even provided the date of the act.  Nonetheless, the prosecutor argued the evidence would be irrelevant because the doctor would testify that injuries such as Mallory's in that area of the body heal extremely fast and in less than five days.

The trial court denied defendant's request to cross-examine Mallory out of the presence of the jury on her prior sexual conduct with her boyfriend.  However, the court allowed defense counsel to ask Mallory and the doctor whether Mallory had any injures or impact to that area of her body prior to the date of the attack.  Counsel could not ask Mallory about sexual encounters with her boyfriend or anyone else.

Defense counsel raised her motion again during trial, this time claiming the evidence was relevant to Mallory's credibility.  In response, because Mallory had testified she was in pain after the incident, the prosecutor stated it would be fair for defense counsel to ask Mallory if she was in pain in her genital area before the attack.  The trial court agreed with that statement.  Otherwise, the court did not modify its earlier order:  "My order is going to be what I said.  No reference to sexual intercourse with the boyfriend, but you can ask her whether or not she noticed any injuries, pre-existing injuries to herself or not."

Defense counsel asked Mallory on cross-examination whether she had any pre-existing injuries to her vaginal area.  Mallory replied, "Not that I can recall, no."  Counsel also questioned Mallory on the same issue as it was referenced in the medical questionnaire given Mallory at the hospital:

16

"Q. And in response to the question, 'Did you have any anal, genital injury, pain and/or bleeding,' you responded, 'No,' correct?

"A. "If that's what's on the paperwork, that's what I said.

"Q. So you didn't have any pain or irritation that you told the doctor about?

"A. Not that I remember, no."

Dr. DeMartinis testified on direct examination that a tear to the posterior fourchette "implies that some degree of force was applied to that area." The posterior fourchette was "a common area for you to see injuries" in women who had been sexually assaulted, although a tear in that area would not necessarily be present in a woman who was forcibly assaulted.  It was also possible to have such a tear from consensual intercourse.  Dr. DeMartinis would not expect to see any tears after consensual intercourse, "[b]ut if somebody was having vigorous sex, then it's possible, and especially if the woman wasn't adequately prepared and her vagina was not lubricated then it's possible."

The prosecutor did not ask Dr. DeMartinis to give his opinion on the age of Mallory's injury.  On cross-examination, defense counsel addressed the issue of the injury's age with Dr. DeMartinis as follows:

"Q. Was there anything that you viewed during the course of your examination that could give you any indication how old this injury was?

"A. No.  Except the fact that it's present – injuries to that area heal up very quickly.

"Q. Okay. And is it true that depending on the depth of the injury, they can last anywhere from 2 to 20 days before they heal?

"A. I'm sure there could be an injury that could take 20 days if it was deep enough, yes.

"Q. And you don't have any record how deep this tear was?

"A. I do not."

**B. Analysis**

After briefing was completed in this case, our Supreme Court held that a sexual assault victim's prior sexual conduct may be admissible for the limited purposes of offering an alternative explanation for the victim's physical injuries.  (*People v. Fontana* (2010) 49 Cal.4th 351, 362-363.)  The high court held that such

17

evidence may be admissible under Evidence Code section 782, provided that the evidence is relevant under Evidence Code section 780 and is not barred by Evidence Code section 352.  The court reasoned: "In such circumstances, 'it is not the fact of prior sexual activity as such that is important, but something about the special circumstances under which that prior sexual activity took place that renders it important.'  [Citation.]  Where the prosecution has attempted to link the defendant to physical evidence of sexual activity on the complainant's part, 'the defendant should unquestionably have the opportunity to offer alternative explanations for that evidence, even though it necessarily depends on evidence of other sexual conduct.'  [Citation.]"  (*People v. Fontana, supra*, 49 Cal.4th at p. 363.)

The trial court did not have the benefit of the Supreme Court's recent ruling, but even if it had, we conclude the court's refusal to allow defendant to cross-examine Mallory about her prior sexual conduct was harmless under the federal and state standards of harmless error.  (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-11]; *People v. Watson* (1956) 46 Cal.2d 818, 836.)  This is because Mallory testified at trial that she had no injury or pain in her vaginal area before the attack.  No matter what had happened five days before the attack, it had no effect on her at the time of the attack.  Moreover, Dr. DeMartinis testified he did not determine the age of the injury, but that its presence suggested to him the injury was recent because injuries in this area of the body heal quickly.  Thus, even if cross-examination had been allowed, it would not have resulted in discovering an alternate cause of Mallory's injury.

More significantly, admission of any evidence from such a cross-examination would not have changed the outcome of this trial.  The evidence against defendant and his defense of consent was overwhelming.  Mallory sought help and reported being raped quickly after the attack.  Her demeanor at the time – crying, scared, completely distraught – was consistent with someone who had just been traumatized.  The injury to her lip supported her testimony that defendant struck her in the mouth when she attempted to scream.  The injury to her posterior fourchette was consistent with sexual assault and implied the use of force.  Defendant discarded his jacket on the side of a dumpster near the crime scene, indicating a consciousness of guilt on his part.  The cologne on the jacket smelled the same as the cologne found on defendant.  Defendant's DNA matched that found on Mallory.  And defendant even wrote a letter of apology to Mallory, stating, "[F]rom the bottom of my heart I am so very sorry for everything that I have put your through.  This was the last thing on my mind that I would have ever done to anybody . . . .  [¶] . . . I know I deserve everything or charge you have against me [sic].  I just wanted to apologize to you for everything."  This statement is an admission and confession of all Mallory accused defendant of doing to her.

18

1

2          In contrast, defendant's story of what happened that morning
changed at least three times.  He originally claimed he was never

3     near the Social Security Administration building that morning.
Then he claimed he was there, grabbed the victim from behind,

4     made her think he was going to hurt her, but then could not
remember what happened after that.  In this second version,
defendant stated he did not know the victim.

5

6          At trial, defendant told a third version completely different from
the other two.  Defendant claimed he knew Mallory, and that they

7     agreed to have consensual sex in an alley at 7:00 a.m. on a cold
December morning a few minutes before Mallory went to work.

8     His only evidence of consent was his third story.  In light of all the
other evidence indicating an act of forcible rape and sexual assault,

9     there was no likelihood that testimony by Mallory that she had
consensual intercourse five days prior to the attack, introduced as
an alternate explanation of her physical injury, would have resulted

10     in a more favorable verdict for defendant.  The direct and
circumstantial evidence was too strong and defendant's credibility

11     too weak for the evidence of prior sexual conduct to change a
juror's mind.  Any error by the trial court in refusing to allow

12     defendant to cross-examine Mallory on her prior sexual conduct
was harmless beyond a reasonable doubt under the federal and

13     state standards of harmless error review.

14     Opinion at 16-22.

15          Criminal defendants have a constitutional right, implicit in the Sixth Amendment, to

16     present a defense; this right is "a fundamental element of due process of law."  *Washington v.*

17     *Texas*, 388 U.S. 14, 19 (1967).  *See also Crane v. Kentucky*, 476 U.S. 683, 687, 690 (1986);

18     *California v. Trombetta*, 467 U.S. 479, 485 (1984); *Webb v. Texas*, 409 U.S. 95, 98 (1972);

19     *Moses v. Payne*, 555 F.3d 742, 757 (9th Cir. 2009).  A defendant's right to present a defense

20     stems both from the Fourteenth Amendment right to due process and the Sixth Amendment right

21     "to have compulsory process for obtaining witnesses in his favor."  *Moses*, 555 F.3d at 757.  A

22     state violates the Sixth Amendment when it arbitrarily denies a defendant the right to put on the

23     stand a witness whose testimony "would have been relevant and material to the defense."

24     *Washington*, 388 U.S. at 23.

25          It is well-established, however, that "the right to present relevant testimony is not without

26     limitation.  The right 'may, in appropriate cases, bow to accommodate other legitimate interests

in the criminal trial process.'" *Rock v. Arkansas*, 483 U.S. 44, 55 (1987) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)).  A criminal defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers*, 410 U.S. at 302.  Thus, a criminal defendant "does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).  "Even relevant and reliable evidence can be excluded when the state interest is strong." *Perry v. Rushen*, 713 F.2d 1447, 1450 (9th Cir. 1983).

A state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. *Drayden v. White*, 232 F.3d 704, 710 (9th Cir. 2000); *Spivey v. Rocha*, 194 F.3d 971, 977-78 (9th Cir. 1999); *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).  A state law justification for exclusion of evidence does not abridge a criminal defendant's right to present a defense unless it is "arbitrary or disproportionate" and "infringe[s] upon a weighty interest of the accused." *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  *See also Crane*, 476 U.S. at 689-91 (discussion of the tension between the discretion of state courts to exclude evidence at trial and the federal constitutional right to "present a complete defense"); *Greene v. Lambert*, 288 F.3d 1081, 1090 (9th Cir. 2002).  "The Supreme Court has indicated its approval of 'well-established rules of evidence [that] permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.'" *Moses*, 555 F.3d at 757.  "A habeas petitioner bears a heavy burden in showing a due process violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005).

Petitioner is claiming, in essence, that the trial court's discretionary determination to preclude cross-examination of the victim about her recent sexual activity violated his federal constitutional rights.  The United States Supreme Court has not "squarely addressed" whether a

1   state court's exercise of discretion to exclude testimony violates a criminal defendant's right to

2   present relevant evidence. *Moses,* 555 F.3d at 758-59. Accordingly, the decision of the

3   California Court of Appeal upholding the trial court's evidentiary ruling is not contrary to or an

4   unreasonable application of clearly established United States Supreme Court precedent and may

5   not be set aside. *Id. See Wright v. Van Patten,* 552 U.S. 120, 126 (2008) (per curiam) (relief is

6   "unauthorized" under Section 2254(d)(1) when the Supreme Court's decisions "given no clear

7   answer to the question presented, let alone one in [the petitioner's] favor," because the state

8   court cannot be said to have unreasonably applied clearly established Federal law). *See also*

9   *Anguiano v. Morales*, No. C 98-4751 SI(PR), 2000 WL 630870 at *9 (N.D. Cal. May 2, 2000)

10  (trial court's exercise of discretion under Cal. Evid. Code § 1252 to exclude untrustworthy

11  evidence did not violate defendant's right to present a defense).

12      In any event, the decision of the California Court of Appeal that any error in precluding

13  cross-examination of the victim was harmless is not unreasonable. In *Fry v. Pliler*, 551 U.S.

14  112, 121-22 (2007), the United States Supreme Court clarified that the AEDPA did not replace

15  the traditional test for prejudice on collateral review established in *Brecht v. Abrahamson*, 507

16  U.S. 619, 637 (1993).[7] After *Fry*, a federal habeas court must assess the prejudicial impact of

17  constitutional error in a state-court criminal trial under the 'substantial and injurious effect'

18  standard set forth in *Brecht* 507 U.S. 619. Further, [w]hen a state court has found a

19  constitutional error to be harmless beyond a reasonable doubt, a federal court may not grant

20  habeas relief unless the state court's determination is objectively unreasonable." *Towery v.*

21  *Schriro* 641 F.3d 300, 307 (9th Cir. 2010).

22      Here, as explained by the California Court of Appeal, the evidence against petitioner was

23  overwhelming. Petitioner essentially confessed to the crime in his letter to the victim. In

24

25      [7] *Brecht* held that on collateral review of a state court criminal judgment under 28 U.S.C.
    § 2254, an error is harmless unless it had "a substantial and injurious effect or influence in
26  determining the jury's verdict." 507 U.S. at 631.

addition, petitioner's testimony at trial was inconsistent with his previous versions of the facts,

and was therefore not entirely credible, and the victim's behavior immediately after the assault

was not consistent with having engaged in consensual activity.  Under these circumstances, the

trial court's erroneous exclusion of testimony regarding the victim's recent sexual contact could

not have had a substantial and injurious effect on the verdict.  Accordingly, petitioner is not

entitled to relief on this claim.

### 3.  Exclusion of Evidence on Social Media

In his next ground for relief, petitioner claims that the trial court violated his right to

confront the witnesses against him and his right to present a defense when it excluded evidence

of Mallory's internet postings within five days after the assault.  Petitioner argues that the

evidence was relevant to show Mallory's state of mind.  Dckt. No. 1 at 7, 12-13.  The California

Court of Appeal denied this claim, reasoning as follows:

> **Exclusion of Evidence of Internet Posting**
>
> Defendant asserts the trial court erred when it excluded evidence
> of postings on Mallory's Internet MySpace page that defendant
> claimed showed Mallory's state of mind five days after the attack
> was not one of someone who had been raped.  We conclude the
> trial court did not abuse its discretion when it refused to admit the
> evidence, and even if it had, the error would have been harmless
> under any standard of review.
>
> **A. Additional background information**
>
> The court recessed trial on a Friday 25 minutes early due to
> Mallory's demeanor while testifying.  According to the court,
> Mallory "is just almost hysterical.  She's just broken down over
> and over again.  She's been crying almost without interruption ever
> since the examination began.  [¶]  I am concerned that she is so
> upset and looks so pitiful that it is going to have an impact on the
> jury, so I think maybe we better stop for the day finally.  [¶]  I'm
> worried about a fair trial here."
>
> The following week, during subsequent cross-examination of
> Mallory, defense counsel requested the court's permission to
> introduce evidence of a post Mallory allegedly made to her
> MySpace page five days after the rape.  The post read:  "Collecting
> cardigans.  [¶] . . . [¶]  My new past time [sic].  [¶]  We also taught
> our kitty, Bruno, to play fetch with his mini catnip tennis ball.  Tre

22

cute." Counsel argues this evidence went to Mallory's state of mind and her credibility.  Counsel stated, "[T]his is not the conduct of somebody who is five days post brutalization.  Her statements do not fit in with the mindset of somebody who is exhibiting all of the symptoms that she's showing in court . . . .  [¶]  The portrayal that she's given is that she's somebody who's been completely devastated by this event, and yet, when she's speaking to the public about what's going on, she's talking about rather inane issues that do not reflect any sort of brutalization or ongoing trauma as she's trying to portray now."

The prosecutor argued against admitting the evidence, claiming the evidence was irrelevant.  Mallory's state of mind five days after the attack was not relevant, and persons who suffer traumatic events still attempt to function in life as best they can:  "Just 'cause she is taking a minute or two to write on this does not mean she's not traumatized by this."

The court denied defendant's request, ruling the evidence was irrelevant.  The court questioned whether the evidence could survive an Evidence Code section 402 hearing, as it believed anyone could access this Internet site and post statements and pictures under someone's name.  It also determined under Evidence Code section 352 that admitting the evidence would require an undue amount of time, as it would require a computer expert to show whether someone could access someone else's MySpace page, and it would confuse the issues and confuse the jury.

Defense counsel argued that Mallory could lay the requisite foundation by testifying if she was the user of this site and if she wrote the post.  The court said even if Mallory could establish that foundation, the evidence still was not admissible under Evidence Code section 352.

**B. Analysis**

We apply the abuse of discretion standard of review to any ruling by the trial court on the admissibility of evidence, including a ruling under Evidence Code section 352.  (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1449.)

We conclude the trial court did not abuse its discretion by determining the evidence, even if relevant, was inadmissible under Evidence Code section 352.  The court believed that admitting the evidence would require expert testimony.  It also believed the evidence's probative value was heavily outweighed by how the evidence would confuse the issues and confuse the jury.  We cannot say the court abused its discretion under these circumstances.

////

1
2
3
4
5
6
7

> Even were we to find the court abused its discretion, we would
> nonetheless conclude the court's error was harmless under both the
> federal and state standards of harmless error review.  As we
> explained above, the evidence against defendant was
> overwhelming.  The admission of this Internet posting, assuming it
> was written by Mallory (a fact that was never established), would
> not have changed the jurors' minds.  There was no possibility that a
> MySpace posting allegedly by the victim mentioning a hobby and
> a pet five days after the attack would have resulted in a more
> favorable verdict for defendant.  Any error by the trial court in
> refusing to admit the posting was harmless under any standard of
> review.

8   Opinion at 22-25.

9           As in the claim discussed immediately above, the decision of the California Court of

10  Appeal upholding the trial court's evidentiary ruling excluding evidence of Mallory's MySpace

11  postings is not contrary to or an unreasonable application of clearly established United States

12  Supreme Court authority because the United States Supreme Court has not "squarely addressed"

13  whether a state court's exercise of discretion to exclude testimony violates a criminal

14  defendant's right to present relevant evidence.  *Wright,* 552 U.S. at 126*; Moses*, 555 F.3d at 758-

15  59.

16          Even assuming arguendo that the trial court violated petitioner's federal constitutional

17  rights in excluding evidence of Mallory's postings on MySpace, the conclusion of the California

18  Court of Appeal that any error was harmless is not contrary to or an unreasonable application of

19  federal law and should not be set aside.  In light of the overwhelming evidence of petitioner's

20  guilt, as set forth above, the posting on MySpace could not have had any substantial effect on the

21  verdict in this case.  Accordingly, petitioner is not entitled to relief on this claim.

22                          **4. Jury Instruction on Lesser Included Offense**

23          In his next ground for relief, petitioner claims that the trial court violated his right to due

24  process when it denied a defense request to instruct the jury on the lesser-included offense of

25  simple kidnapping.  Dckt. No. 1 at 7, 14.  He argues that substantial evidence supported the

26  instruction.  *Id.* at 14.  He also argues that the trial court's failure to issue this instruction "forced

the jury into an 'all-or-nothing choice' between guilt or innocence, creating the risk that the jury

would convict 'simply to avoid setting the defendant free.'" *Id.*

The California Court of Appeal rejected these arguments, reasoning as follows:

### Omission of Instruction on Lesser Included Offense

Defendant claims the trial court erred by not instructing on the lesser included offense of simple kidnapping. He asserts his testimony that he and Mallory engaged in consensual sex provided substantial evidence supporting an instruction on simple kidnapping. We disagree, as there was not substantial evidence to support an instruction on simple kidnapping.

"'In criminal cases, even absent a request, the trial court must instruct on general principles of law relevant to the issues raised by the evidence. [Citation.] This obligation includes giving instructions on lesser included offenses when the evidence raises a question whether all the elements of the charged offense were present, but not when there is no evidence the offense was less than that charged. [Citation.]" (*People v. Moye* (2009) 47 Cal .4th 537, 548, quoting *People v. Koontz* (2002) 27 Cal.4th 1041, 1085.)

"'As our prior decisions explain, the existence of "*any* evidence, no matter how weak" will not justify instructions on a lesser included offense, but such instructions are required *whenever evidence that the defendant is guilty only of the lesser offense is "substantial enough to merit consideration" by the jury.* [Citations.] "Substantial evidence" in this context is "'evidence from which a jury composed of reasonable [persons] could . . . conclude[ ]' "that the lesser offense, but not the greater, was committed. [Citations.]' ([*People v. Breverman* (1998) 19 Cal.4th 142,] 162.)" (*People v. Moye, supra,* 47 Cal.4th at p. 553, first italics in original, second italics added.)

Here, there was insufficient evidence at trial that defendant was guilty only of kidnapping but not aggravated kidnapping so as to justify an instruction on simple kidnapping. Simple kidnapping involves moving a person against his will from one place to another by the use of force or fear. (§ 207, subd. (a).) Aggravated kidnapping, in this case kidnapping for rape, requires a showing that the defendant kidnapped a person for purposes of committing rape. (§ 209, subd. (b)(1).)

Mallory testified defendant put her in a headlock, pulled her into the alley, and then raped her. Defendant, on the other hand, testified he never grabbed Mallory or forcibly moved her into the alley. This evidence gave the jury only two choices: either defendant committed aggravated kidnapping, or he did not kidnap her at all. There was no substantial evidence or theory at trial that

25

1    defendant committed only a simple kidnapping.  Thus, the court
     was under no requirement to give an instruction sua sponte on the
2    lesser included offense of simple kidnapping.

3    Opinion at 25-27.

4          The United States Supreme Court has held that the failure to instruct on a lesser included

5    offense in a capital case is constitutional error if there was evidence to support the instruction.

6    *Beck v. Alabama*, 447 U.S. 625, 638 (1980).  The Supreme Court has not decided, however,

7    whether this rationale also extends to non-capital cases.  The Ninth Circuit, like several other

8    federal circuits, has declined to extend *Beck* to find constitutional error arising from the failure to

9    instruct on a lesser included offense in a non-capital case.  *See Solis v. Garcia*, 219 F.3d 922,

10   929 (9th Cir. 2000); *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998) ("[T]he failure of

11   a state trial court to instruct on lesser included offenses in a non-capital case does not present a

12   federal constitutional question."); *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976) ("Failure of

13   a state court to instruct on a lesser offense fails to present a federal constitutional question and

14   will not be considered in a federal habeas corpus proceeding").  Accordingly, the decision of the

15   California courts denying petitioner relief as to this claim was not contrary to United States

16   Supreme Court authority as set forth in the *Beck* decision.  Further, to find a constitutional right

17   to a lesser-included offense instruction here would require the application of a new rule of law in

18   the context of a habeas petition, something the court cannot do under the holding in *Teague v.*

19   *Lane*, 489 U.S. 28 (1989).  *See Solis*, 219 F.3d at 929 (habeas relief for failure to instruct on

20   lesser included offense in non-capital case barred by *Teague* because it would require the

21   application of a new constitutional rule); *Turner v. Marshall*, 63 F.3d 807, 819 (9th Cir. 1995),

22   *overruled on other grounds* by *Tolbert v. Page*, 182 F.3d 677 (9th Cir. 1999) (en banc) (same).

23         In any event, as noted by the state trial and appellate courts, the evidence introduced at

24   petitioner's trial was insufficient to support a conviction for simple kidnapping.  Petitioner

25   denied that he forced Mallory to do anything against her will, and Mallory testified that

26   petitioner forced her into the alley in order to rape her.  Neither of these factual scenarios

26

constitutes simple kidnapping.  Further, petitioner did not defend this case on the theory that he

committed a simple kidnapping.  Rather, he argued that his encounter with Mallory was

consensual.  In sum, a jury instruction in simple kidnapping would have been irrelevant to the

defense petitioner presented and was not supported by the facts before the trial court.

Under the circumstances presented here, the trial court did not violate petitioner's federal

constitutional rights in failing to give a jury instruction on the lesser included offense of simple

kidnapping.  Accordingly, petitioner is not entitled to relief on this claim.

### 5. Sentencing Claim

In his final claim for relief, petitioner argues that the trial court improperly sentenced him

to consecutive prison terms for the three sex offense convictions because the assaults were only

one continuous transaction and not three separate transactions.  Dckt. No. 1 at 7, 15-16.  He

argues that, because he had no previous criminal record, "it is reasonably probable that the trial

court would have imposed concurrent terms, but for the erroneous belief that full, consecutive

terms were mandatory." *Id.* at 7.

The California Court of Appeal rejected these arguments, reasoning as follows:

**Separate, Consecutive Prison Terms for Sexual Offenses**

Defendant contends the trial court improperly sentenced him to
full, separate and consecutive prison terms for the three sex offense
convictions.  He argues the sexual assaults were a continuous,
uninterrupted incident that occurred on the same occasion, and
thus they did not qualify for full, consecutive sentencing under
section 667.6, subdivision (d).  We disagree.

Subdivision (d) of section 667.6 requires the defendant to serve a
"full, separate, and consecutive term" for each of his sex crime
convictions if the crimes involve "the same victim on separate
occasions."  (§ 667.6, subd. (d).)

"In determining whether crimes against a single victim were
committed on separate occasions under this subdivision, the court
shall consider whether, between the commission of one sex crime
and another, the defendant had a reasonable opportunity to reflect
upon his . . . actions and nevertheless resumed sexually assaultive
behavior.  Neither the duration of time between crimes, nor
whether or not the defendant lost or abandoned his . . . opportunity

to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." (§ 667.6, subd. (d).)

"Our Supreme Court has recently summarized case law construing the 'separate occasions' requirement of section 667.6, subdivision (d) as follows: 'Under the broad standard established by . . . section 667.6, subdivision (d), the Courts of Appeal have not required a break of any specific duration or any change in physical location.  Thus, the Court of Appeal herein cited *People v. Irvin* (199[6] ) 43 Cal.App.4th 1063, 1071, for the principle that a finding of "separate occasions" under . . . section 667.6 does not require a change in location or an obvious break in the perpetrator's behavior:  "[A] forcible violent sexual assault made up of varied types of sex acts committed over time against a victim, is not necessarily one sexual encounter."  Similarly, the Court of Appeal in *People v. Plaza* (1995) 41 Cal.App.4th 377, 385, affirmed the trial court's finding that sexual assaults occurred on "separate occasions" although all of the acts took place in the victim's apartment, with no break in the defendant's control over the victim. (*But see People v. Pena* (1992) 7 Cal.App.4th 1294, 1316 [defendant's change of positions between different sexual acts was insufficient by itself to provide him with a reasonable opportunity to reflect upon his actions, "especially where the change is accomplished within a matter of seconds"]; *People v. Corona* (1988) 206 Cal.App.3d 13, 18 [holding, after the respondent implicitly conceded the point, that the trial court erred in imposing consecutive sentences for different sexual acts when there was no cessation of sexually assaultive behavior "between" acts].)' (*People v. Jones* [ (2001) ] 25 Cal.4th 98, 104-105.)

"Once a trial judge has found under section 667.6, subdivision (d), that a defendant committed offenses on separate occasions, we may reverse only if no reasonable trier of fact could have decided the defendant had a reasonable opportunity for reflection after completing an offense before resuming his assaultive behavior." (*People v. Garza* (2003) 107 Cal.App.4th 1081, 1091-1092.)

Applying this deferential standard, we conclude the trial court here could reasonably have decided that defendant had a reasonable opportunity for reflection after completing each offense before initiating his subsequent offenses.  There was an appreciable time interval between each of defendant's acts.  First, there was time for reflection between the forcible sexual penetration with a foreign objection [sic] and the forcible oral copulation.  After defendant committed the penetration, he unzipped his zipper, removed his penis and demanded Mallory to masturbate him.  Mallory complied.  At one point, she pleaded with him to allow her to stop. Defendant ignored her pleas, told her to spit on her hand and to continue rubbing him.

Then, defendant told Mallory she was going to have to orally copulate him for four minutes. Mallory complained, and defendant dropped his requirement to three minutes. Mallory continued to plead with him not to do this. Defendant then dropped his demand to 30 seconds. Defendant then told Mallory to turn around and face him. When she did, he had covered up part of his face with his jacket. This all occurred before defendant forced Mallory to orally copulate him. There was sufficient time for defendant to reflect upon his actions between the penetration and the oral copulation crimes.

Similarly, there was sufficient time for defendant to reflect upon his actions between forcing Mallory to orally copulate him and his raping her. After the oral copulation, defendant instructed Mallory to get up. She did and turned back around to face the wall. Defendant asked her if she liked it "doggy style," and Mallory said no. Defendant placed his hand underneath Mallory's bra and shirt and fondled her breast. He then pulled down Mallory's skirt and underclothing, placed his hands between her legs, and told her to spread them. After all this, he commenced raping her.

Thus, between the oral copulation and the rape, defendant required Mallory to stand up and change her position, and he committed a separate uncharged sex offense. There can be no doubt that a reasonable trier of fact would conclude defendant had sufficient time to reflect upon his actions between the completion of the oral copulation and the commencement of the rape.

Under these circumstances, we easily conclude the trial court did not err by imposing separate, full and consecutive sentences for defendant's three sex offense convictions.[8]

Opinion at 27-31.

Habeas corpus relief is unavailable for alleged errors in the interpretation or application of state sentencing laws by either a state trial court or appellate court. "State courts are the ultimate expositors of state law," and a federal habeas court is bound by the state's construction except when it appears that its interpretation is an obvious subterfuge to evade the consideration of a federal issue. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). So long as a state sentence "is not based on any proscribed federal grounds such as being cruel and unusual, racially or

---

[8] The recent amendments to section 4019 do not operate to modify defendant's entitlement to credit, as he was required to register as a sex offender, committed for a serious or violent felony, and/or had a prior conviction(s) for a serious or violent felony. (§ 4019, subds.(b)(1), (2) & (c)(1), (2); Stats.2009, 3d Ex.Sess., ch. 28, § 50.)

1   ethnically motivated, or enhanced by indigency, the penalties for violation of state statutes are

2   matters of state concern." *Makal v. State of Arizona*, 544 F.2d 1030, 1035 (9th Cir. 1976). *See*

3   *also Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) ("[t]he decision whether to

4   impose sentences concurrently or consecutively is a matter of state criminal procedure and is not

5   within the purview of federal habeas corpus); *Hendricks v. Zenon*, 993 F.2d 664, 674 (9th Cir.

6   1993) (petitioner's claim regarding merger of convictions for sentencing was exclusively

7   concerned with state law and therefore not cognizable in a federal habeas corpus proceeding).

8        States sentencing courts have wide latitude in their decisions with regard to punishment.

9   *Brothers v. Dowdle*, 817 F.2d 1388, 1390 (9th Cir. 1987). "Generally, a federal appellate court

10   may not review a state sentence that is within the statutory limits." *Walker v. Endell*, 850 F.2d

11   470, 476 (9th Cir. 1987). The Ninth Circuit has specifically refused to consider on habeas

12   review claims of erroneous application of state sentencing law by state courts. *See, e.g., Miller*

13   *v. Vasquez*, 868 F.2d 1116 (9th Cir. 1989) (holding that whether assault with a deadly weapon

14   qualifies as a "serious felony" under California's sentence enhancement provisions is a question

15   of state sentencing law and does not state a constitutional claim). "[A] federal court is limited to

16   deciding whether a conviction violated the Constitution, laws, or treaties of the United States."

17   *Estelle v. McGuire*, 502 U.S. at 67-68. *See also Richmond v. Lewis*, 506 U.S. 40, 50 (1992) (the

18   question to be decided by a federal court on petition for habeas corpus is not whether the state

19   committed state-law error but whether such the state court's action "so arbitrary or capricious as

20   to constitute an independent due process or Eighth Amendment violation"). *Cf. Fetterly v.*

21   *Paskett*, 997 F.2d 1295, 1300 (9th Cir. 1993) ("the failure of a state to abide by its own statutory

22   commands may implicate a liberty interest protected by the Fourteenth Amendment against

23   arbitrary deprivation by a state"); *Walker*, 850 F.2d at 476 ("we may vacate a sentence, however,

24   if it was imposed in violation of due process").

25   ////

26   ////

1   All of petitioner's claims regarding the imposition of his sentence were denied by the

2   California Court of Appeal on state law grounds in a thorough and reasoned opinion.  The state

3   court's decision that petitioner's sentence did not violate state law or the state constitution,

4   derived from its analysis of state law, is binding on this court.  *See Lewis v. Jeffers*, 497 U.S.

5   764, 780 (1990) ("federal habeas corpus relief does not lie for errors of state law . . . .").

6   Petitioner has also failed to demonstrate that his sentence violated federal law or that the

7   state court's decision was contrary to or an unreasonable application of United States Supreme

8   Court authority.  He cites no federal authority to support his claim of sentencing error.  Further,

9   there is no evidence before the court that petitioner's sentence was violative of his right to due

10  process or any other federal constitutional right.  Because petitioner's challenges to his sentence

11  do not establish a federal constitutional violation, he is not entitled to habeas corpus relief on

12  these claims.  *See Souch v. Schaivo*, 289 F.3d 616, 623 (9th Cir. 2002) (petitioner's sentencing

13  claims insufficient to merit federal habeas relief).

14  **III. Conclusion**

15  For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

16  application for a writ of habeas corpus be denied.

17  These findings and recommendations are submitted to the United States District Judge

18  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

19  after being served with these findings and recommendations, any party may file written

20  objections with the court and serve a copy on all parties.  Such a document should be captioned

21  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

22  within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

23  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In

24  his objections petitioner may address whether a certificate of appealability should issue in the

25  event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing

26  ////

31

Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  May 14, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE